UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIVON NEALS,<br><br>        **Plaintiff,**<br><br>v.<br><br>TINA CORTES, et al.,<br><br>        **Defendants.** | Civil Action No. 21-2397 (FLW)<br><br>**MEMORANDUM OPINION<br>& ORDER** |

    Plaintiff Tivon Neals, currently confined at East Jersey State Prison, seeks to bring this civil action *in forma pauperis*, without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). The Court previously denied without prejudice Plaintiff's IFP application, and Plaintiff has resubmitted his IFP application. ECF Nos. 2-3. At this time, the Court grants Plaintiff's IFP application and screens Plaintiff's Complaint, ECF No. 1, for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

    Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

    "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal

1

Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). To survive the Court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In the instant Complaint, Plaintiff alleges violations of his constitutional rights by prison officials Tina Cortez, Daniel Kemble, Marisol Valentin, Mervin Ganesh, and Gregory Cirillo,[1] arising from an alleged conspiracy to deprive him of due process of law at a disciplinary hearing. Plaintiff also attempts to bring a First Amendment retaliation claim against these Defendants, contending that they conspired to seize his word processor and floppy disks and pursued false disciplinary charges against him in retaliation for his filing of a Second Amended Complaint in a civil rights matter entitled "Stromberg."

The Stromberg matter appears to refer to Neals v. Stromberg, Civ. Act. No. 16-7141. *See id.* It appears that the Second Amended Complaint in Stromberg (hereafter referred to as

---

[1] The Court construes Plaintiff to raise these claims against the individual Defendants in their personal capacities <u>only</u>.

2

"Stromberg SAC") was docketed on or about October 24, 2018. *See Neals v. Stromberg*, Civ. Act. No. 16-7141, ECF No. 25. Defendant Ganesh, an Administrator at NJSP, is named as a defendant in the Stromberg SAC. *See* Civ. Act. No. 16-7141 at ¶¶ 41, 293, 255, 257-260, 362-363, 365-366, 372, 374-375, 490, 492-493. Summons of the Stromberg SAC issued as to the unserved defendants, including Defendant Ganesh, on or about December 17, 2018. *See* Civ. Act. No. 16-7141, ECF No. 35. On or about January 24, 2019, Deputy Attorney General Francis Raso accepted service of the Stromberg SAC on behalf of several new defendants, including Ganesh. *See* Civ. Act. No. 16-7141, ECF No. 38.

On September 11, 2018, Plaintiff alleges he was interviewed by Kemble and Valentin, who are special investigations division ("SID") investigators, about an alleged planned prison protest and/or demonstration that occurred on September 8, 2019. *Id.* at ¶¶ 15-16, 18, 20. At the direction of Kemble and Valentin, Plaintiff's Brother word processor was seized. Plaintiff informed Kemble and Valentin that his Brother word processor did not print and he believed he was being targeted for filing the Stromberg SAC. *See id.* at ¶ 21. The Defendants nevertheless ordered the seizure of the word processor and 25 floppy disks; Plaintiff alleges that these items were seized due to his filing of the Stromberg SAC.[2] *See id.* at ¶ 22.

Plaintiff alleges that the US Marshals served the Stromberg SAC on defendants, including Ganesh, in January 2019. *Id.* at ¶ 23. According to Plaintiff, after the Stromberg SAC was served, Defendants Ganesh, Valentin, and Kemble "had a meeting of the minds" and "agreed to act in concert" to retaliate against Plaintiff by filing a false disciplinary charge against him. *Id.* at ¶ 24.

---

[2] As noted above, the Stromberg SAC was docketed on October 24, 2019, after the alleged questioning and seizure of Plaintiff's word processor and floppy disks. As such, it is unclear how the seizure could be retaliation for something that had not yet occurred.

On January 8, 2019, Plaintiff was charged by Kemble and Valentin with various prison infraction related to the protest, which occurred on September 8, 2018. *See id.* at ¶ 25.

On January 11, 2019, Plaintiff appeared before hearing officer Cortez at the disciplinary hearing for the charges related to the protest. *Id.* at ¶ 26. At some point during the disciplinary hearing Cortez told Plaintiff "You think you're judge, jury and executioner." *Id.* at ¶ 3. Plaintiff asked to have the charges dismissed because the charges were four months old and the date on the charges correlated with the date another inmate's word processor and floppy disks were seized. *Id.* at ¶¶ 4, 26, 27. This request was denied by Cortez. *Id.* On January 17, 2019, Plaintiff asked to have the charges dismissed for insufficient evidence, and Cortez also denied this request. *See id.* at ¶ 28.

According to the Complaint, Cortez, Kemble, and Valentin agreed to place a falsified "evidence receipt" in the record which purported to show the date Plaintiff's word processor and floppy disks were given to Cirillo to be examined. *See id.* at ¶¶ 28, 29. The Defendants also agreed not to place in the record Cirillo's Technical Service Unit Report ("TSU Report") to conceal the date Cirillo completed the report and to conceal the fact that the word processor was never analyzed. *See id.* ¶ 30. Valentin coordinated Plaintiff's confrontation with Kemble and Cirillo. *Id.* at ¶ 31.

On January 23, 2019, Plaintiff requested dismissal of the charges due to the lack of TSU report and other evidence. *Id.* at ¶ 32. When Plaintiff asked Cortez why she had not reviewed the TSU report, she told him she did not need the report. *Id.* at ¶ 33. On January 24, 2019, Kemble denied knowing about Plaintiff's lawsuit and also claimed Plaintiff's word processor was analyzed. *Id.* at ¶ 34.

4

On January 28, 2019, Cirillo appeared for confrontation, but Plaintiff was not available. *Id.* at ¶ 35. Cirillo, Valentin, and Kemble agreed that Cirillo would not provide the date on which the TSU report was completed in his confrontation with Plaintiff. *Id.* at ¶ 36. On January 30, 2019, during his confrontation with Plaintiff, Cirillo denied analyzing Plaintiff's word processor and refused to provide the date of the TSU report. *Id.* at ¶ 37.

As a result of this testimony, Cortez amended the charges against Plaintiff from encouraging a demonstration to conspiracy to encourage a demonstration. *See id.* at ¶ 38. Cortez noted that 1) Plaintiff's word processor was not analyzed, 2) she had no reason to discredit Plaintiff's testimony that his word processor could not print, and 3) the letter on Plaintiff's disk needed to be printed in order to be circulated. *See id.*

On January 31, 2019, Plaintiff asked that Cortez recuse herself based on 1) statements she made at the initial hearing, 2) changes she made to the evidence summary, and 3) her improper meeting with Kemble about the TSU report. *See id.* at ¶ 39. Cortez denied this request on February 5, 2019. *Id.* at ¶ 40. On February 7, 2019, Cortez found Plaintiff guilty of encouraging a group demonstration and conduct which disrupts the facility. *Id.* at ¶ 41. As sanctions, Plaintiff was deprived of 515 days of commutation time and received 180 days in administrative segregation. *See id.*

Plaintiff appealed on February 11, 2019, and Administrator Ganesh upheld the finding of guilt on February 16, 2019. *See id.* at ¶¶ 42-43. Plaintiff appealed to the New Jersey Appellate Division, and the Deputy Attorney General assigned to the matter moved to have the matter remanded to the NJDOC for dismissal of the charges; the Appellate Division remanded the matter on May 28, 2020. *See id.* at ¶¶ 44-46.

On remand, a different disciplinary hearing officer found Plaintiff not guilty of the two charges and "rescinded the sanctions" against Plaintiff. *Id.* at ¶ 47. The Appellate Division dismissed the appeal as moot on August 25, 2020. *Id.* at ¶ 48.

The Court construes Plaintiff to assert violations of his constitutional rights under 42 U.S.C. § 1983 and the NJCRA, which is the state law analog to § 1983. Specifically, Plaintiff alleges that the Defendants conspired to deprive him of procedural due process in his disciplinary hearing and conspired to retaliate against him for exercising his First Amendment rights. The Court also separately construes Plaintiff to allege a conspiracy under 42 U.S.C. § 1983 and the NJCRA.[3]

The Court begins with Plaintiff's claim that he was denied procedural due process in his disciplinary proceedings.[4] The Fourteenth Amendment of the United States Constitution provides, in pertinent part, that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law...." Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 564–65 (1974). Here, however, Plaintiff's Complaint clearly states that upon remand from the Appellate Division,

---

[3] The NJCRA was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution. *See Trafton v. City of Woodbury*, 799 F. Supp.2d 417, 443 (D.N.J. 2011). Because NJCRA and § 1983 claims are routinely treated as analogous, the Court considers them together. *See id.* (collecting cases).

[4] The Court does not construe Plaintiff to assert <u>a separate claim</u> for the filing false disciplinary charges, as the filing of a false charge standing alone does not itself violate a prisoner's constitutional rights. *See Mimms v. U.N.I.C.O.R.*, 386 F. App'x. 32, 36 (3d cir.2010) (citing *Smith v. Mensinger*, 293 F.3d 641, 653–54 (3d cir.2002)); *Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d cir.1986) (holding "mere filing of [a false] charge itself" does not constitute cognizable claim under § 1983 so long as inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"). The Court considers the filing of the allegedly false disciplinary charges part of his procedural due process claim and as an adverse action in connection with Plaintiff's First Amendment retaliation claim.

6

a different disciplinary hearing officer found Plaintiff not guilty of the two charges and "rescinded the sanctions" against him. Complaint at ¶ 47.

At issue is whether Plaintiff can bring a § 1983 action for due process violations if the disciplinary charges were reversed and the sanctions were rescinded. Circuit courts that have considered the issue have found that prisoner-plaintiffs in similar circumstances cannot bring claims for damages under §1983. In *Ragan v. Lynch*, 113 F.3d 875 (8th Cir.1997) and *Wycoff v. Nichols*, 94 F.3d 1187 (8th Cir. 1996), the Eighth Circuit determined that the plaintiffs in those actions received all of the procedural due process to which they were is "due," because any errors during the disciplinary proceedings were cured when the charges and sanctions were reversed; *Whitmore v. Hill*, 456 F. App'x. 726, 729 (10th Cir. 2012) (explaining that reversal of the disciplinary conviction, refunding of any fine prisoner had already paid, and elimination of any unpaid fine cured any due process violation that may have occurred during the initial disciplinary hearing and thus afforded prisoner the process he was due).

As explained by the Seventh Circuit in *Phelps v. McCoy*, 189 F. App'x. 528, 529 (7th 2006), a prisoner who succeeds in setting aside the outcome of his disciplinary proceedings and obtaining restoration of his lost credits overcomes the bar imposed by *Heck v. Humphrey*, 512 U.S. 477 (1994) but is unable to proceed in a federal suit:

> [Plaintiff] faces a double bind in his challenge to the CAB's [conduct adjustment board] ruling about the videotape. He could not file this civil rights suit until his CAB convictions were set aside because a judgment in his favor would have necessarily implied the convictions' invalidity. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). But now that the convictions have been reversed and his good-time credits restored, he has no basis for a federal suit. The protections of the due process clause do not attach unless Phelps was deprived of a liberty interest. *See Lekas v. Briley*, 405 F.3d 602, 607 (7th Cir. 2005). Since his good-time credits were never revoked, he cannot claim a right to due process under *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41

> L.Ed.2d 935 (1974). And he was not punished, so he cannot claim that he has a protected interest in avoiding other sanctions short of credit deprivation, which themselves do not even rise to the type of "atypical and significant hardship" that is protected by the due process clause. *See Sandin v. Conner*, 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (itself an action under § 1983).

Like other courts that have considered the issue, the Court finds that Plaintiff's temporary loss of 515 commutation credits is insufficient to trigger a liberty interest where the Complaint alleges that the credits were restored.

To the extent that plaintiff seeks relief based upon disciplinary confinement, the Due Process Clause does not provide protection against the imposition of discipline, including disciplinary confinement and the loss of various privileges inasmuch as these other forms of discipline do not "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Torres v. Fauver*, 292 F.3d 141, 150–51 (3d Cir. 2002) (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Sandin*, 515 U.S. at 486; *see Griffin v. Vaughn*, 112 F.3d 703, 706–07 (3d Cir.1997). Under *Sandin*, prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions. *See, e .g., Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); *Griffin*, 112 F.3d at 706–08 (fifteen months in administrative custody is insufficient to trigger a due process violation).

Plaintiff alleges that he received 180 days administrative segregation as a sanction for the disciplinary charges. Even if Plaintiff served all of that time, six months is an insufficient period of time to trigger a liberty interest. *See Smith*, 293 F.3d at 653; *Griffin* 112 F.3d at 706-08.

8

In sum, neither Plaintiff's temporary loss of commutation credits nor the 180 days in administrative confinement amount to a liberty interest sufficient to trigger due process protections. Therefore, the Court dismisses Plaintiff's procedural due process claims without prejudice for failure to state a claim for relief as to all Defendants.

The Court next addresses the first Amendment retaliation claims. To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) "he suffered some 'adverse action' at the hands of prison officials," and (3) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted). Plaintiff alleges that his constitutionally protected conduct was the Marshal's service of the Stromberg SAC on Defendant Ganesh. Plaintiff alleges that the adverse actions are 1) seizure of his word processor and floppy disks, 2) the disciplinary charges themselves, and 3) the alleged misconduct by Defendants that occurred during the disciplinary hearing. The Court assumes without deciding that Plaintiff adequately pleaded constitutionally protected conduct and adverse action.

Plaintiff's allegations connecting the service of the Stromberg SAC on Ganesh to the adverse actions are extremely tenuous. As an administrator at NJSP, Ganesh upheld the outcome of the disciplinary proceeding. But Plaintiff does not assert or provide any well-pleaded facts to suggest that Ganesh, acting alone, upheld the allegedly flawed disciplinary proceeding in order to retaliate against Plaintiff for naming him in the Stromberg SAC. Instead, Plaintiff alleges that Ganesh, Valentin, and Kemble conspired to bring disciplinary charges against him after the Marshal's served the Stromberg SAC on Ganesh. Other than this conclusory allegation, but he provides no well-pleaded facts to bolster his belief that his service of the Stromberg SAC on

9

Ganesh was a substantial motivating factor in Kemble and Valentin's decisions to seize his word processor and floppy disks or file the disciplinary charges against him. Nor does Plaintiff plausibly connect the alleged misconduct that occurred during hearing to his filing of the Stromberg SAC.

Where a plaintiff lacks direct evidence linking his constitutionally protected conduct and an adverse action (or actions), he may provide facts showing (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link. *See Watson*, 834 F.3d at 422 (3d Cir. 2016); *see also Wilcox v. Martinez*, 858 F. App'x. 477, 479 (3d Cir. 2021) (affirming dismissal of First Amendment retaliation claim where prisoner "did not plausibly allege a causal link between the exercise of his constitutional rights and the adverse action").

Here, the filing of the disciplinary charges by Kemble and Valentin occurred in January 2019 and the service of the Stromberg SAC on Ganesh also allegedly occurred in January 2019. The only allegation that links these two seemingly unrelated events involving different individual Defendants is Plaintiff's bald contention that Kemble, Valentin, and Ganesh conspired and/or agreed to bring the disciplinary charges to retaliate against Plaintiff for naming Ganesh in the Stromberg SAC. This bare allegation recites the elements of a conspiracy with no factual support and, thus, is not entitled to the presumption of truth. Moreover, Plaintiff also contends that when Kemble and Valentin questioned him in early September 2018 about the protest and seized his word processor and his floppy disks, Plaintiff told them at that time he believed he was being questioned in retaliation for his filing of the Stromberg SAC. Plaintiff, however, did not file the Stromberg SAC until October 2018. As such, this allegation also lacks plausibility. Although Plaintiff contends that Kemble, Valentin, Cortez, and Cirillo conspired to present false evidence and hide evidence at the disciplinary hearing, those allegations are unconnected to Plaintiff's

assertion of his First Amendment rights, *i.e.*, the filing of the Stromberg SAC.  For all these reasons, Plaintiff fails to state claims for First Amendment retaliation.

Plaintiff's bare allegations of conspiracy are likewise too conclusory to state a plausible claim for relief.  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970) ).  Under the notice-pleading standard, a complaint must include more than "conclusory allegations of concerted action...." *Abbott v. Latshaw*, 164 F.3d 141, 148 (3d Cir. 1998).  It must also contain at least some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).  As noted above, the facts as currently pleaded do not support Plaintiff's bare allegations that SID investigators Valentin and Kemble conspired with Ganesh to bring disciplinary charges against Plaintiff or that the alleged misconduct by Cortez, Cirillo, Kemble, and Valentin during the disciplinary hearing was motivated by a desire to retaliate against Plaintiff for his filing of the Stromberg SAC.

Plaintiff's conspiracy claims also fail because he lacks a predicate violation under § 1983.  A plaintiff must establish the "predicate" constitutional tort to succeed on a claim for civil conspiracy. *Glass v. City of Phila.*, 455 F.Supp.2d 302, 359–60 (E.D. Pa. 2006); *see also Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 141 (3d Cir. 2017) ("There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege.").  As explained above, Plaintiff's

procedural due process and First Amendment retaliation claims fail to state a claim for relief.[5] As such, his § 1983 and NJCRA conspiracy claims also fail to state a claim for relief.

In sum the Court dismisses § 1983 and NJCRA claims in their entirety for failure to state a claim for relief pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). Because it is possible that Plaintiff can cure his deficiencies in his civil rights claims, the Court provides him with leave to submit an Amended Complaint within 45 days.[6] *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile).

**IT IS THEREFORE**, on this 31st day of March 2022,

**ORDERED** that Plaintiff's IFP application, ECF No. 3, is **GRANTED**;

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of East Jersey State Prison; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915

---

[5] As explained in FN4, falsification of evidence is not a standalone claim and thus cannot be a predicate claim for conspiracy.

[6] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. *Id.*

does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; *i.e.*, Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed **WITHOUT PREJUDICE** in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim for relief; and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and move to reopen this matter within 45 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Complaint; and it is further

**ORDERED** that if Plaintiff fails to submit an Amended Complaint within 45 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and **ADMINISTRATIVELY TERMINATE** this matter accordingly.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge